**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

JOHN MAGOFFIN,              )
                                 )
           Plaintiff,        )    Case No. 4:22-CV-470
                                 )
v.                            )
                                 )    COMPLAINT
HARRISONVILLE-CASS R-IX     )    UNDER 42 U.S.C. § 1983, TITLE VII
SCHOOL DISTRICT,          )    and MISSOURI HUMAN RIGHTS ACT
503 S. Lexington           )
Harrisonville, Missouri 64701   )
                                 )    DEMAND FOR JURY TRIAL
           Defendant.     )

## <u>COMPLAINT</u>

1. Plaintiff John Magoffin brings this action against Defendant Harrisonville-Cass R-IX School District to redress employment discrimination and civil rights violations by the Defendant arising under alternative theories including Title VII and 42 U.S.C. § 1983 involving discrimination, retaliation, First Amendment rights violations, equal protection rights violations, and due process rights violations. Plaintiff asserts ancillary state law claims under the Missouri Human Rights Act.

2. Plaintiff is a duly licensed Missouri science teacher, who until July 1, 2021, was a permanent teacher employed by the District for nine years with an indefinite contract under the Teacher Tenure Act of Missouri, § 168.102, RSMo. et seq.

3. Plaintiff alleges he has been ironically singled out for state sanctioned single-viewpoint discrimination for speech he carried out in furtherance of the loftier goals of the District to teach students higher-level thinking and analytical skills, challenging their single viewpoint type perceptions and asking questions to help them in developing their abilities to see both sides of an issue, not just accept what's rote all as part of the everyday curriculum to prepare them for real world situations. He spoke during the situations relayed herein as a teacher on issues or matters of

1

public concern as citizens, the element required to trigger First Amendment Free Speech rights as a public employee when dealing with students intent on learning and absorbing from a teacher who was encouraged at <u>Defendant's behest</u> through policy and training by the District for the past several years to do social-emotional teaching, to find ways to connect with students on their level, keep them interested, and especially to challenge them to become equipped with the ability to reason, assess, research and analyze what others say and not to accept at face value what others proffer. And for that, he was wrongfully terminated from his job and had his reputation handed back to him on a platter dressed up in the guise of a disciplinary hearing for allegedly uttering in some derogatory or pejorative fashion the "n-word", *which he disputes saying*, as part of a discussion about race prompted by the Advanced Placement Biology curriculum he taught for the AP regulating board, not the District, which was tied in the last few weeks of the school year to such topics as race and the Human Genome Project.

4. The District has as a part of its Freshman/Sophomore level course curriculum as required reading "To Kill a Mockingbird" which uses the word in its entirety, as if Advanced Placement college bound high school students in this day and age have never heard the word or understood it as an inappropriate pejorative, and which Mr. Magoffin was *condemning not condoning* in his discussion overheard by some students uninvolved (and thus half-listening) in the sideline discussion he was having with a student about how race and language identifications change with each generation.

5. How does a biology teacher respond to difficult questions regarding race? The District has provided scant training on the dilemma. Plaintiff claims students are

2

mistaken in claiming he used the entire word because he is repulsed by it. His testimony in his termination hearing was believable to 3 out of 7 board members.

6. This was a benign discussion turned into a federal case because the District was bent on reverse discriminating, retaliating, and cancelling a white, male, Christian teacher, who some might label as conservative, from the education culture of Harrisonville for fear of backlash.

7. Plaintiff alleges he was discriminated against and suffered harassment caused by the District's unlawful policies under Title VII and the Missouri Human Rights Act based on his race, color, sex and religion and retaliated against when he complained about his concerns, in writing, with his administration after they improperly suspended him from active duty on April 20, 2021 for both pretextual reasons and in violation of his constitutional rights.

8. Magoffin alleges as a permanent teacher under Missouri law he held constitutionally protected property rights to continued employment under § 168.102, RSMo et seq., designed by the legislature and noted by court's legal commentary as the necessary breathing room to foster a balanced education, and his concomitant constitutional liberty interests in safeguarding his reputation, honor and good name in the community.

9. He alleges his rights were violated when the District, acting through administrators and four Board members, improperly terminated him on June 30, 2021, by a 4-3 vote, following an 11-hour *endurance contest* foisted on him in the guise of a due process hearing, which began at 5:33 p.m. on June 15 and continued until 4:41 a.m. the next day, over the objections of Magoffin.

10. Plaintiff alleges he was deprived early on in the "process" of his constitutional and federal rights, immunities, and privileges by Defendant misusing the Missouri

3

Teacher Tenure Act as a cudgel and weapon when Assistant Superintendent Jason Eggers with approval of Superintendent Paul Mensching suspended him from active performance of his teaching duties approximately one month before any charges under the Teacher Tenure Act were filed. These acts were pretexts to discrimination and retaliatory against Plaintiff, among other violations of law.

11. Their actions in suspending him prior to any charges being filed were improper and are not protected by any immunity under federal or state law. The administrators' unauthorized decision to suspend him violated a permanent teacher's property and liberty rights secured under § 168.116.4, RSMo. Only the School Board had the authority to place him on suspension from active duty, not administration, under these circumstances.

12. Plaintiff engaged in protected activity under Title VII and the Missouri Human Rights Act before and during the investigation that raise issues of discrimination, reprisal, and harassment before and after charges were filed against him and which caused him damages by affecting terms and conditions of his employment.

**Jurisdiction and Venue**

13. This Court has jurisdiction over this action by virtue of its authority to hear federal questions pursuant to 28 U.S.C. §§ 1331 and 1343 as to Plaintiff's claims under 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution and under Title VII, and other state law claims that may be raised that are so related as to form part of the same case or controversy pursuant to 28 U. S. C. § 1367(a).

14. The Court has the authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C.§ 2201 and 2202.

4

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all of the events giving rise to claims occurred in the Western District of Missouri.

## Parties and Key Players

16. Plaintiff Magoffin is a citizen of the United States and resident of Cass County, Missouri. He is a white, male, Christian, who some District employees, patrons and students have apparently perceived, labeled and/or identified for their own discriminatory, harassing and/or retaliatory purposes as politically affiliated as a conservative. At all times relevant hereto he spoke on matters of public concern, not private grievances and thus he claims he is entitled to the full protections of the First Amendment and Free Speech/Association rights.

17. Defendant, Harrisonville-Cass R-IX School District, employs fifteen or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year and subject to confirmation by discovery and/or the jury is alleged to employ more than 200 employees. The District is also a "person" as defined under § 1983.

18. Key Player Paul Mensching is a resident of Cass County and the Superintendent of Schools for the District, a final decision maker for the District for certain supervisory acts he is alleged to have taken herein, and he had openly held himself out to be a member of the Mormon religion. He is the father of a student in Plaintiff's Advanced Placement Biology class at issue herein. His usurpation of certain statutorily proscribed School Board authority is a material fact asserted by Plaintiff herein.

19. Key Player Jason Eggers is a resident of Cass County and the Assistant Superintendent of Schools for the District and former principal of Plaintiff Magoffin. He was a final decision maker and/or authorized decision maker by the

5

Superintendent, not the Board of Education, acting for the District for certain supervisory acts he is alleged to have taken herein specifically including his issuance of a suspension from active-duty letter given to Plaintiff on April 20, 2021. His usurpation of certain statutorily proscribed School Board authority is a material fact asserted by Plaintiff herein.

20. Key Player Tina C. Graef is a resident of Cass County and at relevant times hereto was the President of the Board of Education of the Harrisonville-Cass R-IX School District, an elected position under Missouri state law and a member of the governing body of the District. She was also at relevant times herein the chairperson of the Board for purposes of convening a statutory hearing panel associated with Mr. Magoffin's termination under the Teacher Tenure Act. Her alleged participation in or ratification of the usurpation of certain statutorily proscribed School Board-only authority by administrators is a material fact asserted by Plaintiff herein.

21. Key Player Doug Alexander is a resident of Cass County and at the relevant times hereto was a duly elected member of the Board of Education of the Defendant District.

22. Key Player Doug Meyer is a resident of Cass County and at the relevant times hereto was a duly elected member of the Board of Education of the Defendant District.

23. Key Player Nancy Shelton is a resident of Cass County and at the relevant times hereto was a duly elected member of the Board of Education of the Defendant District.

24. Key Players Graef, Alexander, Meyer and Shelton were the four Board Members who Plaintiff asserts improperly acted, knowingly and intentionally, to violate his rights when they used their state actor status to place their personal interests ahead

6

of their elected responsibilities and for improper, constitutionally violative reasons to vote to terminate Plaintiff's employment for unsupportable and unlawful reasons.

**Background Allegations**

25. Plaintiff alleges the District engaged in actionable reverse discrimination against him.

26. At all relevant times hereto, Plaintiff was a white, male employee working for the Defendant District, which employed predominately females as teachers. His employer through the acts of its administration and leadership during his recent tenure had engaged in behaviors and adopted policies that upon information and belief transformed the District's policies to intentionally become one of those unusual employers who discriminate against what would otherwise have been considered "an historically favored group" identified as white, male employees.

27. Upon information and belief, the District and/or its administrative leadership intended to and in the case of Plaintiff did further impose policies and teachings of cultural activism that avowed white, male, Christians are inherently racist and deemed they must be terminated/cancelled from the education culture simply because they exist. These reverse discriminatory policies were adopted by the District to such an extent and ingrained in the administration system to such a degree through imposition of these policies, formally and informally, against Plaintiff that this belief has become a recognized, approved, informal policy, which was applied against Plaintiff by final decision makers in relationship to his employment.

28. Evidence of enforcing against Plaintiff this "disfavored yet protected status" of white, male, Christian employees is alleged to be bound up in the administration's decision to knowingly and purposely refuse and fail in April 2021 to take seriously

7

and investigate written threats Plaintiff received from a co-worker and/or her husband. Acts of discrimination by Defendant were based upon reverse-protected classes (male, white, Christian, perceived conservative) made against Plaintiff allegedly caused by the motivating factor of threats by the husband of a co-worker, identified herein as JB.

29. JB's husband, JB2 identified as a black male, threatened Plaintiff, in writing, claiming that Plaintiff expressed "micro aggressions towarday (sp) daughter for three years and youe (sp) maga bull shit comments. Let me tell you right now if it continues we are going to have a serious problem. You will see a side of me you've never seen. I am done with you and your bull shit. And keep talking about "Jesus" and showing the absolute hypocrite you are. Fking pathetic."

30. Further evidence of enforcing this disfavored but protected status of white, male, Christian employees by the District is alleged by Plaintiff to be found in: the failure of the District in May 2021 or thereafter to take seriously, investigate and/or enforce by discipline for violations of the purported school district inappropriate language policy (that ironically Plaintiff allegedly violated), by co-worker JB, a white female, associated with her inappropriate Facebook posting on May 10, 2021 referring to Plaintiff therein.

31. Plaintiff alleges the District held JB, wife of JB2 and mother of a minor mixed-race student, to a different standard than Plaintiff based on his reverse protected category of race, color, gender and religious affiliation. This occurred where JB on May 10, 2021 referred to the District and Mr. Magoffin by name, misused her position of employment to post false facts, and also posted defamatory inferences about him.

32. JB is alleged to have generated a false, distorted narrative on Facebook inferring or stating: 1) she had a right to breach confidentiality and to speak about her employer's confidential personnel investigation, 2) she had a right to demand action terminating Plaintiff because of her inside knowledge or personal connections, 3) she stated she possessed unrevealed, inside knowledge, 4) she claimed the administration was taking too long to investigate, 5) she demanded that something must be communicated to the community immediately, as if there was an emergency need to know, and she was entitled to communicate unrevealed information to the community, 6) she claimed the community must know immediately "that something so clearly racist and wrong was said", 7) she identified and linked a wrongful communication to Plaintiff, by name and employment with the District, 8) she claimed Plaintiff "use[d] language that is that of a racist", 9) she inferred she had a right to claim Plaintiff "made a hostile environment out of a classroom" when she had no personal knowledge of the material, purported statement, 10) she claimed the right to be offended and claimed her right to be speak and be offended by virtue of her advocating for all kids plus, by inference known by many in the community who knew her familial connections, by virtue of the racial or political/religious identifications of herself and the protected class of her family members and her protected class by association therewith, implying her daughter was present *when she knew her daughter was not present in the specific situation she was intent on revealing publicly*, 11) she wrongfully attributed rumor she heard and presented it as truth and then judged it worthy of Plaintiff's termination, and 12) she did this in the context of beginning with a non-analogous situation, asserting this situation was analogous, to a recent news story involving another local district where a coach was alleged to have directed a comment using the actual "n-word" or variation thereof to

9

a black student listening to certain music and denigrating the individual, and inferring or implying Plaintiff had directed/used the "n-word" in an offensive, vulgar and denigrating sense against and thus vilifying someone, presumably a student, which was absolutely not true. These race, color, sex, religious and political assertions were entirely inappropriate under the District's purported language usage policy.

33. The District through admission of Jason Eggers on June 15-16 had not investigated Mr. Magoffin's complaint regarding JB's conduct as a District policy violation, which he found threatening and requested the administration's guidance on how he was to handle this breach by a co-worker. The District never provided him any guidance and never investigated.

34. Mr. Magoffin complained to the District that it unfairly handled his request for intercession and excused JB's May 10, 2021 confidentiality breach, misappropriation of "knowledge" outside her ken, her inappropriate actions and behaviors, which actually damaged him and placed his family in danger by the circus atmosphere the posting by JB engendered.

35. JB asserted she had inside knowledge regarding a discussion for which she and her daughter had <u>no</u> first-hand knowledge, because neither one was in the classroom.

36. She was a school social worker and used her employment to create and publish a false narrative, then placed herself in the seats of both judge and jury. She made declarations weaving and winding herself and her daughter into a commentary about a confidential personnel matter for which she had no legitimate or proper District authority to act in order to create a stage for her own drama. The District decidedly took no action against her policy violating behaviors, per Mr. Eggers' hearing testimony.

37. JB's statements were calculated to incite bitterness, anger and racially hostile reactions against Plaintiff, to tortiously interfere with Magoffin's contract of employment for her own personal or professional gain, to stand in judgment over a communication for which she had no knowledge, and to use insinuation combined with describing a false scenario to suit her preferred "context", when she had <u>no personal knowledge of the context of any communication by Mr. Magoffin associated with an Advanced Placement Biology class,</u> but insinuated insider information otherwise.

38. Plaintiff alleges the failure of the District to promptly and decidedly act upon JB's May 10, 2021 violative behaviors in the face of her intentional poisoning of the District's educational atmosphere fomented a racially discriminatory, threatening backlash against Plaintiff, a District employee, which would have been obvious once reported to the District.

39. Plaintiff alleges the District should have taken some action, at the very least investigating, interviewing, and counseling/disciplining JB, in a manner commensurate with how Plaintiff was treated, which it failed to do.

40. The District as Plaintiff's employer violated his equal protection rights and discriminated against him in its different treatment between JB and himself.

41. Plaintiff alleges the District, pursuant to its purported policies and procedures, should have protected him from her specious claims that Plaintiff was "racist", a "bigot", and claiming he created a "hostile environment" out of his classroom based on information the District knew she had no personal knowledge of.

42. These public claims were reported to the District by Plaintiff when he complained about JB's conduct and demanded the District enforce its purported policies against her and they took no timely action, if any.

11

<u>COUNT I</u>
*Title VII Claims Against Defendant District*

43. Plaintiff incorporates by reference the facts and allegations set forth in all preceding paragraphs as if fully set forth here.

44. Defendant District is subject to Title VII jurisdiction as Plaintiff's employer at all times relevant hereto within the definitions of federal law as an employer/state/local government agency believed to have more than 200 employees in the requisite time periods.

45. Plaintiff has administratively exhausted his remedies before the EEOC through the U.S. Department of Justice, Civil Rights Division, and/or the Missouri Commission on Human Rights when he filed a timely Charge of Discrimination on October 15, 2021 with both agencies for race, color, sex, religion and retaliation under Title VII. A copy of the Charge # E-10/21-53382 and 28E-2022-00087C is attached hereto as Exhibit 1 (along with a clear draft copy) and is incorporated herein by reference.

46. On April 26, 2022 the Missouri Commission on Human Rights issued to Plaintiff its Notice of Right to Sue. A copy of the Notice of Right to Sue from the MCHR is attached as Exhibit 2.

47. On June 27, 2022 the U.S. Department of Justice, Civil Rights Division, issued to Plaintiff its Notice of Right to Sue within 90 Days. A copy of the Notice of Right to Sue under federal law is attached as Exhibit 3.

48. Plaintiff has met all conditions precedent to filing his Title VII and MHRA claims.

49. Plaintiff possessed a federal statutory right under Title VII of the Civil Rights Act of 1964, as amended, to be free of race, color, sex and religious discrimination and retaliation by his then employer Defendant District.

12

50. Plaintiff possesses the right to raise complaints of reverse race, color and sex discrimination because the Defendant through the acts of its administration and leadership at relevant times hereto had engaged in behaviors and adopted policies that upon information and belief transformed the District's policies to become one of those unusual employers who discriminates against what would otherwise have been considered "an historically favored group" identified as white, male employees.

51. Plaintiff has a federal statutory right under Title VII to be free from retaliatory action by Defendant District for his protected participation or opposition under Title VII as an employer subject to Title VII.

52. Plaintiff, a white, male, and Christian was and is a member of several protected groups under reverse discrimination principals under Title VII.

53. As shown by the foregoing, including facts detailed in Plaintiff's Charge of Discrimination that are incorporated herein, Plaintiff suffered intentional discrimination at the hands of Defendant District and Defendant's agents, including but not limited to Mensching, Eggers, and JB, based on his race, sex and religious associations, in violation of Title VII.

54. Defendant took adverse action against him based on these protected classes when he was terminated on June 30, 2021, for pretextual reasons.

55. Defendant failed to make good faith efforts to enforce policies to prevent unlawful discrimination against Plaintiff, after he complained to Eggers about the actions of JB, and he was damaged thereby.

56. Defendant as Plaintiff's employer and former employer failed to properly train or otherwise inform the District's supervisors and employees concerning the duties and obligations under the civil rights laws, including Title VII and Plaintiff was damaged thereby.

57. Plaintiff was entitled to raise complaints concerning unlawful religious discrimination and harassment he endured and to participate in investigations concerning allegations of religious discrimination and retaliation and likewise was entitled to the protection of Title VII against retaliation.

58. Plaintiff engaged in protected activity under Title VII when he complained during the investigation undertaken by Eggers about an incident involving Mensching's son and a discussion about the Mormon religion suggesting his son do his own research into opinions regarding some people's views about classifying Mormonism as a branch of Christianity. Plaintiff was concerned that Superintendent Mensching triggered an investigation regarding Plaintiff based on this religious discussion that was had with his son before class began in the week or so prior to Plaintiff's suspension on April 20, 2021.

59. Plaintiff's complaint regarding religious retaliation was not investigated until at least a month after his position was terminated, which was months after he raised his concerns in April, 2021. This failure to investigate timely is alleged to be a violation of his Title VII rights and adversely affected him because had it been investigated and presented to the Board, the outcome may have been different. His free speech rights were violated during the entire hearing process.

60. The aforesaid occurrences were the direct and proximate result of the negligence and carelessness of Defendant District and its employees and agents while acting within the scope and course of their employment.

61. As a direct result of Defendant's conduct, Plaintiff has suffered and continues to suffer lost opportunities, emotional distress, anxiety, stress, embarrassment, lost earnings capacity, loss of economic opportunities, reputational damage, humiliation,

14

loss of enjoyment of life, and consequential damages, as well as additional costs and general damages, as well as attorney's fees.

62. Defendant's indifference and resulting action was wanton, willful and with reckless disregard and neglect of Plaintiff's rights, safety and well-being, justifying the imposition of punitive damages, if appropriate.

63. WHEREFORE, Plaintiff prays for an award of actual, consequential, compensatory, and general damages against Defendant in an amount in excess of $75,000, under Title VII fully compensating him for the damages suffered as a direct and proximate result of Defendant's unjustified actions, an award of interest and costs of suit, including reasonable attorney's fees, punitive damages if and as justified, and such and other further relief as the Court finds just and proper.

## COUNT II
### *Missouri Human Rights Act Claims against Defendant District*

64. Plaintiff incorporates by reference the facts and allegations set forth in all preceding paragraphs as if fully set forth here.

65. Plaintiff Magoffin is a person aggrieved by unlawful discriminatory practices under § 213.010 et seq. RSMo, the Missouri Human Rights Act, committed by Defendant against him as alleged herein.

66. Defendant School District committed unlawful discriminatory practices, the motivating factor of which was his protected class and Defendant's wrongful conduct was based on his race, color, sex and/or religion as it relates to his employment.

67. Plaintiff was damaged as a result of adverse actions taken by the District because of his race, color, sex and religion as it relates to employment.

68. Plaintiff alleges his protected classifications/criterion were the motivating factors, in each classification, for the Defendant's adverse actions and/or decisions, including

15

but not limited to his termination. The proscribed conduct would not have taken place unless he was a white, male, Christian when the allegations arose out of his protected speech rights under the First Amendment, his protected association rights under the religion clause of the First Amendment or were because of policies and procedures adopted and enforced by the District's final decision makers.

69. A complaint was filed with the Missouri Commission on Human Rights on October 15, 2021, attached as Exhibit 1 incorporated herein as if fully set forth, and more than 180 days passed since that filing.

70. The MCHR had not completed its administrative processing and Plaintiff requested, in writing, a letter indicating Plaintiff's right to bring a civil action within 90 days of the notice.

71. The notice from the MCHR was received by Plaintiff on April 26, 2022 as evidenced by Exhibit 2 attached hereto and he has filed this complaint in a timely manner.

72. All conditions precedent have been meet for Plaintiff to lawfully file his MHRA claims herein.

73. The discriminatory practices include but are not limited to enforcing a state sanctioned viewpoint discrimination against a white, male, Christian forbidding him from even discussing intellectually the use of race terminology, which he condemned, and furthermore, classifying Plaintiff as an irredeemable person simply because he was born male and white to parents with Christian values.

74. The discriminatory practices are set forth in his Charge of Discrimination and incorporated herein by reference.

75. He was retaliated against because he dared to stand against a policy and procedure that left him no positive options—the District wrongfully demanded he resign in April and May 2021 for illegitimate reasons or instead face a public hearing process

16

the District warned him would be vicious and reputation-damaging…neither of
which option was a path forward with positive outcomes. Either way he was
discriminated against and retaliated against, and he chose what he saw as the lesser
evil and decided to publicly fight for his best self and his own high ground when he
knew he had not said anything unprotected by First Amendment rights.

76. The process itself was retaliatory for his having stood up for the rights he possessed
as a white, male Christian. The District determined to terminate his employment
for no satisfactory reason under MHRA.

77. WHEREFORE, Plaintiff prays for an award of actual, consequential, compensatory,
and general damages against Defendant in an amount in excess of $75,000, under
the MHRA fully compensating him for the damages suffered as a direct and
proximate result of Defendant's unjustified actions, an award of interest and costs of
suit, including reasonable attorney's fees, punitive damages if and as justified, and
such and other further relief as the Court finds just and proper.

<u>COUNT III</u>
**Civil rights claims under 42 U.S.C.§ 1983 against Defendant District**

78. Plaintiff incorporates by reference the facts and allegations set forth in all preceding
paragraphs as if fully set forth here.

79. Plaintiff alleges that at all times relevant hereto, Defendant District and its Key
Players were acting under color of state law and their actions were made possible by
virtue of state law.

80. Relevant to this case, Magoffin taught, among other science courses and duties as a
District teacher, collegiate level material in Advanced Placement Biology offered at
the District's high school pursuant to a District arrangement with the AP Central
Board, which governed this course's curriculum.

17

81. Stated summarily, the students earn college level credit while still in high school by taking the Harrisonville-Cass R-IX AP Biology course Magoffin taught, depending upon the institution they might decide to attend thereafter. These students were intellectually college students, not high school students at the time of events set forth herein.

82. Plaintiff alleges Defendant and its Key Players acting in concert with one another deprived him and caused him to suffer loss of federal constitutional rights guaranteed to him by the Due Process Clause of the Fourteenth Amendment, the Free Speech and Association Clause of the First Amendment, and the Religious Guarantee Clause of the First Amendment when they on behalf of Defendant District committed the following acts and violations, including acting in accordance with Defendants' purportedly adopted custom, policy and/or practice in violating Plaintiff's constitutional rights as set forth below:

A. Eggers and Mensching participated in the wrongful issuance of a suspension of Plaintiff, a tenured teacher, from the active performance of his duties when only the vote of the School Board is the legislatively mandate mechanism for issuing such a suspension. They did this on April 20, 2021 and this improper action set in motion the subsequent due process and free speech violations that otherwise would not have occurred but for the usurpation of the authority by Key Players Eggers and Mensching.

B. Thereafter Plaintiff alleges on information and belief that combined with concerted actions of Board President Tina Graef, Mensching and Eggers, these three individuals and perhaps others, conspired to cover up the pre-charge constitutionally improper due process violation and employment discrimination by retaliating against him, doubling down and determining to issue charges not

18

otherwise warranted under circumstances that violated Plaintiff's free speech, association and religious rights, his due process rights and his equal protection rights by treating him differently than other teachers who have been alleged to have committed one-time incidents of speech-related "violations of District policy."

C.   Eggers and Mensching denied Plaintiff's Equal Protection rights by treating him differently from his peers, namely JB and another teacher who admittedly used swear words in a class angry with students, who were both treated with either no discipline or minor discipline while Plaintiff was taken to task and subjected to charges and a public hearing under the Teacher Tenure Act for allegedly "willful and persistent" violation of state law.  His comments at issue were neither willful nor persistent and the District acted maliciously, with deliberate indifference to or in reckless disregard for the natural and probable consequences of their acts in violation of his rights to be treated similarly for similar purported offenses.

D.   The admitted failure by Eggers to investigate and/or on information and belief the failure to discipline JB or take any action against her husband are adverse actions and/or retaliatory behaviors by the District and its administrators against Plaintiff tied to his race and color, white, his sex, male, his perceived, alleged political associations as stated by JB2 to be "MAGA", and his religion, Christianity, while ignoring the actionable behaviors in violation of District policies of JB, who is believed to be white, female and of unknown political and religious belief, and her husband, who is believed to be black, male, admittedly anti-MAGA, and of unknown religious belief.  Two different standards were applied by the District and used against Plaintiff to wrongfully discriminate

19

against him and to deprive him of his free speech, association and religious rights, based on another District employee's and her husband's perceptions, which the District appeared to adopt as its own perceptions during the investigation and hearing associated with his termination.

E. The District actually failed to properly adopt in August 2020 of any teacher handbook policies when the School Board voted to rescind all prior rules and regulations and then failed to actually vote on any publicly-presented replacement handbook in the meeting itself or attached to the proposed agenda, thus effectively having no properly adopted policies and procedures in force associated with the purported inappropriate language regulation they attempted to cite in the charges finally issued against him on May 18, 2021.

83. As to each lettered assertion above, these bad acts by Defendant through its decision maker agents were done without lawful justification, intentionally, maliciously, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourteenth and First Amendments.

84. Defendants Graef, Mensching and Eggers, pre-charge filing, were acting in their individual capacities and/or officially on behalf of the District as then final decisionmakers on the suspension issue prior to May 18, 2021, when charges were filed.

85. During the pendency of the pre-hearing suspension and before the hearing was convened on June 15, 2021, the Plaintiff raised an issue of EdCounsel LLC's alleged conflicts of interest in the firm's duality of representation of both Mensching/Eggers

20

(as the prosecution) and the School Board, itself, (as fact finders/jury) following Plaintiff's written notice of the alleged usurpation of the Board's statutory, non-delegable authority.

86. Plaintiff alleges based on these facts that Mensching, Eggers and Graef, plus the entire School Board presuming they were given the June 1, 2021 email sent by Plaintiff's counsel, were on notice by June 1, 2021 or shortly thereafter, that Mr. Magoffin was alleging his constitutional rights to procedural and substantive due process were being violated, they needed to take notice and consider the conflict of interest their counsel's actions were presenting, and boiled down to its most salient implications: Plaintiff was raising a big red flag for the Board to get separate legal advice because the administration was represented by EdCounsel and the administration was alleged to have exceeded their authority and usurped the Board's nondelegable duty, which results in a non-waivable conflict of interest and opens the District up to liability.

87. Magoffin alleges the Defendant's improper actions detailed herein resulted in his unlawful pre-charge, pre-hearing suspension and his eventual unlawful termination of employment with the District.

88. As a result of the foregoing, Plaintiff was deprived of his associational, religious, and free speech rights as well as the right to be free from retaliation for exercising his constitutional rights as specified, and was otherwise damaged and injured.

89. As a result of the foregoing, Plaintiff was deprived of his due process, equal protection and free speech rights as specified or as may be further determined through discovery, he suffered specific and serious injury, lost wages and lost economic opportunities, reputational damages, psychological injury and emotional

21

distress, anxiety, humiliation and was otherwise generally and consequentially damaged and injured.

90. WHEREFORE, Plaintiff prays for an award of actual, consequential, compensatory, and general damages against Defendant in an amount in excess of $75,000, under 42 U.S.C. § 1983 fully compensating him for the damages suffered as a direct and proximate result of Defendant's unjustified actions, an award of interest and costs of suit, including reasonable attorney's fees, punitive damages if and as justified, and such and other further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates the place of trial in Kansas City, Missouri.

Respectfully submitted,

/s/ Jean Lamfers
Jean Lamfers, MO #37721
Lamfers & Associates, L.C.
1600 Genessee Street, Suite 956
Kansas City, MO 64102
Tel.: (913) 962-8200
jl@lamferslaw.com
ATTORNEY FOR PLAINTIFF